IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**BRUCE CARR,**

    **Plaintiff,**

v.                                         **CASE NO. 2:11-cv-0348**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Bruce Carr (hereinafter referred to as "Claimant"), filed an application for DIB on June 23, 2008, alleging disability as of April 1, 2007, due to asthma, diabetes, cholesterol, lumbar disc disease, cervical discogenic disease, subclinical hyperthyroidism, and bad knees. (Tr. at 20, 122-25, 126-29, 147-55, 178-85, 190-96.) The claim was denied initially and upon reconsideration. (Tr. at 20, 68-72, 77-79.) On January 20, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 80.) The hearing was held on May 27, 2010 before the Honorable Karl Alexander. (Tr. at 34-61, 62, 89, 95.) By decision dated June 25, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-29.) The ALJ's decision became the final decision of the Commissioner on April 12, 2011, when the Appeals Council denied Claimant's request for

review. (Tr. at 2-7.) On May 18, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work

experience. 20 C.F.R. § 404.1520(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity during the period from his alleged onset date, April 1, 2007, through March 31, 2008, his date last insured. (Tr. at 22.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of degenerative disc disease/degenerative arthritis of the lumbar/lumbosacral spine, asthma, obesity, and diabetes mellitus type II. (Tr. at 22-23.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23-24.) The ALJ then found that Claimant had a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 24-27.) As a result, Claimant could not have returned to his past relevant work. (Tr. at 27.) Nevertheless, the ALJ concluded that Claimant could have performed jobs such as sewing machine operator, parking lot attendant, mail clerk, document preparer, and ampoule sealer, which exist in significant numbers in the national economy. (Tr. at 27-28.) On this basis, benefits were denied. (Tr. at 28.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 50 years old at the time of the administrative hearing. (Tr. at 38.) He has an eighth grade education. Id. In the past, he worked as an assistant exterminator, concrete/casting laborer, septic tank manufacturer/truck driver, and excavator operator. (Tr. at 40-41, 52-55.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize the evidence below.

Physical Health Evidence

Records indicate Claimant was treated by Dr. Curtis on approximately 12 occasions from January 2, 2007 to January 5, 2010, four times during the relevant time period

4

(alleged onset date, April 1, 2007, through March 31, 2008, date last insured). (Tr. at 245-70, 272-75, 282-83, 287-99.)  Each treatment note during the relevant time period, Dr. Curtis states Claimant's "Problem List" as: "1. Type II DM [diabetes mellitus].  2. Asthma.  3. Degenerative disk disease of the lumbar spine.  4. Hyperlipidemia.  5. Bilateral knee pain.  6. Subclinical hyperthyroidism.  7.  Obesity." (Tr. at 290, 291, 293, 295, 299.)  Dr. Curtis lists Claimant's medications as:

> 1. Hydrocodone APAP 10/325 #150 per month one q [*quaque*: each, every] 6 hr [hour] prn [*pro re nata*: as needed].
>
> 2. Actos 30 mg [milligram] po [*per os*: by mouth, orally] qd [*quaque die*: daily].
>
> 3.  Glucotrol 10 mg po bid [*bis in die*; twice a day].
>
> 4. Lipitor 20 mg 1 po qd.
>
> 5.  Arthrotec 75 mg po bid.
>
> 6. Glucophage 1000 mg po bid.
>
> 7.  Advair 100/50 1 po bid.
>
> 8. Albuterol neb.
>
> 9. Nexium 20 mg qd.
>
> 10. Clarinex 5 mg po qd.
>
> 11. Neurontin 300 mg 1 po qd.
>
> 12. Lodine 400 mg bid.
>
> 13. Bactroban Cream, apply bid.
>
> 14. Spectazole Cream, apply bid.
>
> 15. Ketoconazole Shampoo, use twice weekly.
>
> 16.  Baclofen 5mg po bid.

Id.

On May 22, 2007, Dr. Curtis noted that Claimant had two primary problems: "sinus congestion…increasing back pain. Has history of degenerative disc disease of the lumbar spine. Has been treated with Hydrocodone, Flexeril, and Neurontin for some time now. No recent insighting trauma or injury…PE [physical examination] General: Alert and oriented in no acute distress…Will repeat MRI study of the lumbar spine which has not been done in several years." (Tr. at 290.)

On June 5, 2007, Dr. Curtis noted that Claimant's chief complaint was that he "[c]ontinues to have periodic dizzy spells. Fullness right ear" and recommended "Mucinex 600 mg po bid for the next two weeks." (Tr. at 291.)

On October 3, 2007, Dr. Curtis stated that Claimant's chief complaint as: "Don't feel like sinus medicine is working" and diagnosed him with "sinus congestion and extrinsic allergies." (Tr. at 293.)

On February 18, 2008, Dr. Curtis noted that Claimant's chief complaint was "[e]ar fullness with drainage bilaterally. Legs cramping…Has otherwise been doing well." (Tr. at 295.)

On March 12, 2008, Claimant had an MRI [magnetic resonance imaging] study of the lumbar spine without contrast at Charleston Area Medical Center [CAMC]. (Tr. at 205-06.) Michael E. Anton, M.D., concluded: "Multilevel spondylotic changes. This is most pronounced at L3-4, and L4-5 level where there is mild bilateral neural foraminal narrowing due to osteophyte and disc. No advanced canal stenosis is present." (Tr. at 206.)

On April 17, 2008, Dr. Curtis stated: "Mr. Carr presents for f/u [follow up]. MRI on 3-12-08 at CAMC revealed multilevel spondylotic changes, most pronounced at L3-4, L4-5.

6

Mild bilateral neuroforaminal stenosis is noted at this point. States he's doing "okay". Still has significant lumbar back pain." (Tr. at 299.)

On April 29, 2008, Clinton Curtis, M.D., New River Health Association - North Fayette Clinic, stated in a "To Whom It May Concern" letter:

> I am writing this letter on behalf of my patient, Bruce Carr, whom I have known for many years now. I am his primary care physician. Mr. Carr suffers from severe lumbar disc disease, cervical discogenic disease as well. He has concomitant health problems including diabetes and subclinical hyperthyroidism. He is totally and permanently disabled from his customary occupation and from any gainful employment.

(Tr. at 285, 300.)

On July 17, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment of Claimant through his date last insured of March 31, 2008. (Tr. at 207-14.) The evaluator, Thomas Lauderman, D.O., concluded Claimant could do light work with all postural limitations being "occasionally." (Tr. at 209.) He found that Claimant had no manipulative, visual or communicative limitations. (Tr. at 210-11.) He marked that Claimant's only environmental limitations were to avoid concentrated exposure to temperature extremes, fumes, odors, dusts, gases, poor ventilation, etc, and to avoid even moderate exposure to hazards. (Tr. at 211.) Dr. Lauderman stated that after review of the medical evidence, "the claimant is found to be mostly credible." (Tr. at 214.)

On July 21, 2008, Dr. Curtis completed a "West Virginia Department of Health and Human Resources Medical Review Team (MRT) General Physical (Adults)" form. (Tr. at 218-21.) Dr. Curtis marked on the form that Claimant had "normal" speech, posture, and ears and that his vision was 20/40 in his right eye and 20/50 in his left eye. (Tr. at 218.) He noted that in his gait, Claimant "favors left." Id. After examining Claimant, he checked

that Claimant was "normal" in all areas save "Orthopedic" due to "lumbar pain, knee pain." (Tr. at 219.) He marked "No" in response to the questions: Is applicant able to work full-time at customary occupation or like work; Is applicant able to perform other full time work. Id. In response to "Duration of inability to work full-time" Dr. Curtis checked "one year." Id. He stated that Claimant should not be referred for vocational rehabilitation and concluded: "total permanent disability." (Tr. at 220.)

On December 30, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment of Claimant through his date last insured of March 31, 2008. (Tr. at 237-44.) The evaluator, A. Rafael Gomez, M.D., concluded Claimant could do medium work and perform all postural limitations "frequently" except "climbing, ladder/rope/scaffolds", which he could do "occasionally." (Tr. at 239.) He found that Claimant had no manipulative, visual or communicative limitations. (Tr. at 241-42.) He marked that Claimant's only environmental limitations were to avoid concentrated exposure to vibration and hazards. (Tr. at 241.) Dr. Gomez concluded: "Patient is not fully credible. His allegations are out of proportion to the medical findings. Reduced to medium work." (Tr. at 242.)

On January 26, 2009, Dr. Curtis wrote a "To Whom It May Concern" letter, which stated: "I am writing this letter on behalf of Mr. Bruce Carr. Progress notes incorrectly indicated that he was working. He has been disabled and has not worked for over a year." (Tr. at 271.)

On April 8, 2010, Dr. Curtis completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form wherein he marked that Claimant could lift and/or carry less than 25 pounds; could stand/walk 2 hours in an 8-hour workday; could sit less than 2

8

hours in an 8-hour work day; could not do any of the postural activities save for balancing, which he could do "occasionally"; could not do any of the physical activities, save for pushing and pulling; and that his environmental restrictions were temperature extremes, chemicals, dust, fumes, and humidity. (Tr. at 277-80.)

> On April 8, 2010, Dr. Curtis stated in a separate letter to Claimant's representative:
>
> I have known Mr. Carr for many years now and he suffers from significant degenerative disc disease of the lumbar spine and bilateral knee pain. Despite therapy to improve these symptoms, he is really unable to do the things he previously enjoyed, which included motorcycle riding and travel. He is completely and totally disabled from any gainful employment.

(Tr. at 281.)

> On April 15, 2010, Dr. Curtis stated in a letter to Claimant's representative:
>
> I received your correspondence dated April 12, 2010. In that correspondence, you asked me whether or not the limitations I had described previously would have existed in the same severity on April 1, 2007 or before March 31, 2008. Indeed, these symptoms did exist in the same severity prior to March 31, 2008. The same symptoms prompted the end of his work April 1, 2007. I hope this correspondence accurately answers your question.

(Tr. at 284.)

> On July 26, 2010, Dr. Curtis stated in a letter to Claimant's representative:
>
> I am writing this letter on behalf of Mr. Bruce Carr. As you know, he has been my patient for many years. He has progressive neuropathic pain related to his diabetes. This adds to his disability related to lumbar discogenic disease. He has been disabled, totally and permanently, for many years. His medical condition has worsened in the interim secondary to complications of his diabetes.

(Tr. at 302.)

> On December 11, 2010, Claimant's representative received a letter from Dr. Curtis, which stated:
>
> I am writing this letter on behalf of Mr. Bruce Carr who saw me in follow up

> today regarding lumbar discogenic disease. He states that he is still attempting to obtain Social Security Disability Benefits. I was moved to write this letter, as Mr. Carr is without a doubt disabled secondary to lumbar discogenic disease. He has daily dysfunction and pain. In fact, these symptoms have been ongoing over the last several years. He walks with a cane and is no longer able to perform his customary occupation. He previously enjoyed riding motorcycles, and unfortunately is not able to do this anymore and has not done this for many years.
>
> Mr. Carr is totally and permanently disabled from his customary and all occupations. Both subjective and objective data exists to document his disability. In fact, on the date of his last visit, 12-7-2010, we sent him for a repeat MRI of the lumbar spine, as he has had worsening lumbar back pain with radiation into the left leg. I am writing this letter in hopes that it may expedite his obtaining Social Security Disability Benefits. In addition to his medical co-morbidities, progressively worsening financial hardship is compounding his overall health.

(Tr. at 303-04.)

Mental Health Evidence

On July 22, 2008, a State agency medical source was unable to complete a Psychiatric Review Technique form for the relevant period through March 31, 2008. (Tr. at 222-35.) The evaluator, James Bartee, Ph.D., concluded that there was "no MER [medical evidence of record] in file in regards to his psych problems prior to his DLI [date last insured]. Insufficient evidence prior to DLI." (Tr. at 222-35.)

On December 23, 2008, Joseph A. Shaver, Ph.D., reviewed the July 22, 2008 Psychiatric Review Technique form and concluded that "the assessment of 7/22/08 is affirmed as written." (Tr. at 236.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give controlling weight to the opinion of Claimant's treating physician, Dr. Curtis, regarding the limitations imposed by lumbar discogenic

10

disease, osteoarthritis in both knees, progressive neuropathic pain from diabetes and cervical disc disease. (Pl.'s Br. at 15-20.) Specifically, Claimant argues that the ALJ erred in concluding that Dr. Curtis' treatment notes did not support his opinion regarding the physical limitations imposed by Claimant's medical conditions:

> The ALJ stated that Dr. Curtis did not indicate any significant back pain in his progress notes. The record reflects that from December 2, 2007, progress note through the January 5, 2010, progress note Dr. Curtis lists the diagnosis of degenerative disc disease in every progress note. Each note also reflects that the plaintiff was prescribed Hydrocodone and Neurontin for pain and Flexeril or Baclofen as a muscle relaxer for his back. Dr. Curtis specifically mentions the plaintiff's back pain as the principal cause of the plaintiff's disability in every special report he wrote, i.e., April 29, 2008, July 21, 2008, April 8, 2010, July 26, 2010, and December 11, 2010.
>
> The ALJ stated that the record contained no functional assessments completed prior to the date last insured. The record reflects that Dr. Curtis prepared a report addressing this issue on April 15, 2010, when he stated that the plaintiff's symptoms had existed in the same severity from April 1, 2007, to March 31, 2008, and that these symptoms ended the plaintiff's ability to work on April 1, 2007.
>
> The ALJ stated that the claimant did not report any limitations to Dr. Curtis in his activities of daily living and Dr. Curtis noted no restrictions. Dr. Curtis reported the claimant's inability to ride motorcycles and travel on April 8, 2010, and December 11, 2010. On March 3, 2010, Dr. Curtis reported the plaintiff's goal was to walk 10 minutes every other day.
>
> Due to the failure of the ALJ to provide controlling weight to the opinion of the plaintiff's treating physician regarding the plaintiff's functional capacity, without substantial evidence to support his opinion, the ALJ's finding that the plaintiff can perform work at the light exertional level with the above-described limitations is erroneous.
>
> Dr. Curtis' opinion that the plaintiff could not complete an 8 hour work day was supported by all of his treatment records and several special reports prepared for this claim and the W. Va. Department of Health and Human Resources. The plaintiff's testimony was consistent with this finding. The record does not support the ALJ's attempt to discredit Dr. Curtis' opinion.

(Pl.'s Br. at 19-20.)

11

The Commissioner's Response

The Commissioner responds that substantial evidence supports the ALJ's finding that Claimant could perform the limited range of light and sedentary work identified by the vocational expert between April 1, 2007 and before March 31, 2008, when his insured status expired. (Def.'s Br. at 9-12.) Specifically, the Commissioner argues:

> Substantial evidence supports the ALJ's finding that Plaintiff could perform the limited range of light and sedentary work identified by the vocational expert during the relevant period in this case – April 1, 2007 through March 31, 2008. Two state agency physicians reviewing Plaintiff's claim for benefits both opined that Plaintiff had the physical residual functional capacity to perform at least a limited range of light work (Tr. 207-14, 237-44). The ALJ fully accounted for Plaintiff's physical work-related limitations that were supported by the record by restricting him to light and sedentary work with a sit/stand option; requiring only occasional postural movements, except for never kneeling, crawling, or climbing (ladders, ropes, or scaffolds); and with no exposure to temperature extremes, wet or humid conditions, environmental pollutants, or any sort of hazards (Tr. 56). The vocational expert was able to identify light and sedentary work Plaintiff could perform despite those limitations (Tr. 57). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff was not disabled on or before March 31, 2008.
> 
> The ALJ was not required to accept as controlling Dr. Curtis' extreme conclusions because they simply were not supported by the record, including Dr. Curtis' own treatment records, as well as Plaintiff's own statements and activities. The ALJ retains the duty to evaluate medical opinions, including treating physician opinions, and judge whether they are supported by and consistent with the rest of the record. 20 C.F.R. § 404.1527(d). The more supported and consistent an opinion is with the record as a whole, the more weight will be given that opinion. 20 C.F.R. § 404.1527(d)(3), (4).
> 
> In this case, the record shows that Plaintiff has been treated very conservatively for his back complaints, with medication from Dr. Curtis, his family physician. Dr. Curtis never referred Plaintiff to physical therapy, to a specialist, nor for any other treatment due to Plaintiff's back complaints. In fact, the bulk of Dr. Curtis' treatment notes relate to complaints other than back complaints, and most examination notes do not even include an examination of Plaintiff' spine. Furthermore, Dr. Curtis repeatedly stated, even after Plaintiff's insured status expired, that Plaintiff was overall generally doing well (Tr. 259-60, 293, 295). Indeed, a state agency physician reviewing Plaintiff's record in December 2008 opined that Plaintiff's

12

> allegations "are out of proportion to the medical findings" (Tr. 242). Furthermore, Plaintiff's asthma, diabetes, and subclinical hyperthyroidism are well controlled (Tr. 48, 259). Accordingly, the ALJ was not required to accept as controlling Dr. Curtis' conclusion that Plaintiff was completely disabled…
>
> Furthermore, contrary to Dr. Curtis' comment that Plaintiff stopped working on April 1, 2007 because of his symptoms, Plaintiff himself stated that he was fired from his job because of "my long hair and a beard, but I could not crawl around under the houses like I was suppose[d] to" (Tr. 148, 284). The ALJ gave Plaintiff every benefit of the doubt in the residual functional capacity assessment (including a complete inability to crawl), and the vocational expert identified light and sedentary work Plaintiff could perform despite his work-related limitations. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff was not disabled between April 1, 2007 and March 31, 2008.

(Def.'s Br. at 9-12.)

Analysis

Claimant argues that the ALJ erred in evaluating Dr. Curtis' medical opinions and in finding that the doctor's opinions were not supported by the record. (Pl.'s Br. at 15-20.)

The ALJ made these findings regarding Dr. Curtis' reports and the State agency medical source opinions:

> Related to the claimant's impairments since his alleged onset date, the record indicated that in May 2007 he was complaining of increased back pain. A physical examination at that time showed spinal muscular tenderness, but a straight leg raising test was negative (Exhibit 16F/4). While he complained of some sinus problems and leg cramps at subsequent visits through February 2008, the record showed no complaints of back pain, chest pain, shortness of breath, numbness, or tingling, and he was generally reported as doing well overall (Exhibits 16F/5, 7 and 9). The claimant had a magnetic resonance imaging study of the lumbar spine in March 2008, which indicated a small left paracentral disc protrusion at T11-12, facet hypertrophy at L5-S1, and mild bilateral foraminal narrowing at L3-4 and L4-5, but no advanced canal stenosis (Exhibit 1F). At a follow-up visit with Clinton Curtis, M.D., his primary care physician, after his date last insured, while the claimant complained of lumbar pain, he stated that he was doing "okay" (Exhibit 16F/13).

Based on the medical evidence of record through the date last insured, the undersigned finds that claimant's allegations as to the intensity, duration and limiting effects of asthma, diabetes mellitus and back pain are not entirely credible when viewed with the record as a whole. The claimant was being treated for all of these impairments prior to his alleged onset date while he was still working full time, and there was no indication in the medical evidence of record that any of these impairments significantly worsened through the date last insured. Relating to his back, the claimant's straight leg raising test was negative and he had no canal stenosis. The record showed no problems with gait and no evidence that he need an assistive device to ambulate during that time. While his diabetes mellitus was reported as not controlled because of non-compliance around the alleged onset date, no edema, neuropathy, or numbness was noted at his subsequent examinations. Further, at all his examinations, his lungs were clear, with no rales, rhonchi or wheezes, and there were no asthma attacks noted. The record did not show any emergency room visits or hospitalizations for any reason during the relevant period, and the record indicated that, other than some sinus problems and leg cramps, the claimant consistently reported that he was "well" (Exhibits 16F.7, 9) and "okay" (Exhibit 16F/13) during this time period. Further, the claimant did not complain to his doctor that he was limited in his activities of daily living in any way during the relevant period. Therefore, based on the medical evidence of record for the relevant time period, the ALJ finds that the claimant was not precluded from work activity at the above residual functional capacity, which would have fully accommodated his legitimate symptoms through the date last insured. The undersigned also notes that there was no evidence prior to the date last insured that the claimant was prescribed or was wearing a back brace, as he testified to, so no additional restrictions related to it were added to the residual functional capacity.

The undersigned also considered the medical evidence of record after the date last insured, but found no evidence to suggest that the claimant was incapable of work activity as prescribed in the residual functional capacity based on his subsequent treatment (Exhibits 8F, 9F, 10F, and 12F).

The undersigned has considered the assessments of state agency physicians Thomas Lauderman, D.O., and A. Rafael Gomez, M.D. and accords Dr. Lauderman's opinion greater weight (Exhibits 2 and 7F). The Social Security Administration requires the undersigned to consider the findings of fact by the state agency medical consultants about the nature and severity of the claimant's impairments; however the undersigned is not bound by these findings (SSR 96-6p). Dr. Lauderman found the claimant capable of "light" exertional work activity through the date last insured, while Dr. Gomez found him capable of "medium" exertional work, While the undersigned has accorded more restrictive postural limitations than both physicians, which in

giving the claimant the maximum benefit of doubt, the undersigned found were warranted.

The undersigned has also considered the opinions of Dr. Curtis both before and after the date last insured stating that the claimant was totally and permanently disabled, but accords these opinions less weight than the state agency physicians (Exhibits 4F, 13F, 14F, 15F, and 16F/14). After the date last insured, Dr. Curtis continued to opine that the claimant was permanently disabled, and stated that the same limitations listed in those opinions would have existed prior to the date last insured (Exhibits F4, 13F, and 14F). However, the undersigned finds that Dr. Curtis' treatment notes during the relevant period do not support that opinion. Throughout the relevant period, the claimant only saw Dr. Curtis four times and these visits did not indicate any significant asthmatic problems, diabetes mellitus symptoms or back pain (Exhibit 16F). The record contained no functional assessments completed prior to the date last insured and no musculoskeletal examinations were performed at his visits; however the claimant did not report any limitations to Dr. Curtis in his activities of daily living and Dr. Curtis noted no restrictions. Further, the claimant was consistently reported as "in no acute distress" and the claimant reported that he was doing well overall (Exhibit 16F). Therefore, the undersigned finds that Dr. Curtis' own treatment notes do not support his opinions that the claimant was totally disabled through the date last insured. In addition, determinations as to whether an individual is disabled are an administrative finding that is reserved to the Commissioner (SSR 96-5p).

In sum, the ALJ finds that the longitudinal evidence of record adequately supports the residual functional capacity determination which accommodates the claimant's legitimate impairment-related limitations through the date last insured. For all of the reasons stated and in view of the circumstances and evidence cited, the undersigned is convinced that the claimant had from April 1, 2007, through the date last insured, the inherent capacity to perform at least such limited work activity as has been defined within the parameters above.

(Tr. at 25-27.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2005). Thus, a treating physician's opinion is afforded "controlling

weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2005).

Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

The court finds that the ALJ's decision reflects a careful consideration of Claimant's impairments, both alone and in combination, in keeping with the applicable regulations. Contrary to Claimant's assertions, the ALJ did not disregard the opinion of Claimant's treating physician, Dr. Curtis, when considering Claimant's disability and functional capacity. The undersigned concludes that the ALJ did not err in declining to give weight to Dr. Curtis's opinion that Claimant had a very limited or no ability to function in several physical work-related areas. (Tr. at 26, 277-81.) As explained by the ALJ, such extreme limitations were not supported by Dr. Curtis's treatment records which show mostly unremarkable objective physical findings. The four office visits Claimant had with Dr. Curtis during the relevant time period show that Claimant's chief complaints were related to sinus problems. (Tr. at 290-95.) Dr. Curtis's statements of April 29, 2008, January 26, 2009, April 8, 2010, April 15, 2010, July 26, 2010, and December 11, 2010 all postdate March 31, 2008, Claimant's date last insured. (Tr. at 271, 281, 284, 285, 300, 302, 304.) While Dr. Curtis asserts in some of the statements that Claimant was "totally and permanently disabled" during the relevant time period, his treatment notes do not support this conclusion. (Tr. at 290-95.) Dr. Curtis's opinion is also inconsistent with the findings of two State agency consultants, Drs. Lauderman and Gomez, who independently reviewed the record and, like the ALJ, found that Claimant had the residual functional capacity to perform a range of at least light work through his date last insured. (Tr. at 207-14, 237-44.) These conclusions are appropriate for a claimant who has been treated conservatively with medication from his primary care physician for his back and arthritis complaints, and who has never been referred to physical therapy or a specialist for treatment of his complaints. Medical records show Claimant's asthma, diabetes, and subclinical hyperthyroidism are

well controlled by medication. (Tr. 259).

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 31, 2012

Mary E. Stanley
United States Magistrate Judge